36 C.C.P.A.(Patents)

Application of CAMPBELL.
Patent Appeal No. 5511.

United States Court of Customs and
Patent Appeals.

Dec. 7, 1948.

Toulmin & Toulmin, of Dayton, Ohio
(H. A. Toulmin, Jr., D. C. Staley, and J.
M. Mason, all of Dayton, Ohio, of counsel), for appellant.

W. W. Cochran, of Washington, D. C.
(H. S. Miller, of Washington, D. C., of
counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and
HATFIELD, JACKSON, O'CONNELL,
and JOHNSON, Judges.

JACKSON, Judge.

This is an appeal from a decision of the
Board of Appeals of the United States
Patent Office affirming that of the Primary
Examiner rejecting all of the claims 15,
16, and 20 to 24, inclusive, of an application for a patent alleging new and useful
improvements in an "Insecticide and Method of Application" thereof.

Claims 15 and 16 are article claims and
claims 20 to 24, inclusive, are method
claims. Claims 15 and 20 are illustrative
of the subject matter of the involved
claims and read as follows:

"15. A non-caking insecticide preparation for roaches comprising sodium fluoride suspended in volatile carrier, and a
soluble insecticide dissolved in said carrier."

"20. A method of providing surfaces
with sodium fluoride so that it adheres to
said surfaces in the form of a loose powder, comprising the step of spraying a suspension of sodium fluoride in a volatile
carrier onto said surfaces, and to produce
on said sprayed surfaces a soft, adherent
residue of sodium fluoride."

The application relates to an insecticide
and a method for its application. The
disclosed insecticidal preparation comprises sodium fluoride held in suspension by
kerosene as a carrier together with
pyrethrins. It is designed for the destruction of roaches. The insecticide is applied
to a surface to be treated by means of
spraying in a pin stream under low pressure. That method is said to result in the
evaporation of the kerosene leaving a soft
adherent residue of sodium fluoride. It
appears that the adherent sodium fluoride
sticks to the limbs and other appendages
of the roach, and as it has clean personal
habits, the adherent substance is drawn
into its mouth in the process of cleansing
its limbs, and thus when the sodium fluoride reaches the stomach, the roach dies.

The Primary Examiner rejected all the
claims as being drawn to an aggregation
and also on the ground of being unpatenta-

ble over the cited prior art. The Board of Appeals did not specifically refer to the rejection on the ground of aggregation, but in its general affirmance of the examiner, such ground is affirmed in legal effect. The board expressly agreed with the action of the examiner in rejecting the claims as unpatentable over the prior art, reading as follows:

Buc, 2,013,028, September 3, 1935.

Booth, 2,047,354, July, 14, 1936.

App, 2,221,772, November 19, 1940.

Bulletin 707, U. S. Department of Agriculture, 1918, pages 9, 10, and 14 to 16, inclusive.

In the patent to Buc, there is disclosed an insecticidal composition of pyrethrins or rotenon (an insecticidal principle from derris root), and kerosene adapted for the destruction of roaches and other household insects.

The patent to Booth is for a method of manufacturing substances in finely divided form and particularly adapted to pigments, insecticides, and similar materials. It discloses that sodium fluoride can readily be converted to a desired degree of fine dispersion for insecticidal purposes. In carrying out the process of the patent it is said that a fusion in which sodium fluoride is dissolved can be quenched into water containing small amounts of calcium chloride.

The App reference relates to insecticidal and fungicidal oil particularly adapted for insecticidal and fungicidal sprays as applied to vegetation. It discloses that among the oils found fit for use is "normally refined kerosene," in which there is either dissolved or dispersed, among other things, insecticidal material, such as rotenon, pyrethrum, and organic copper compounds. It is said that App's preparation will "cling remarkably to the foliage with the result that what may be described as their residual efficiency as distinguished from their effect at the time of application is not seriously impaired even by rainfall * * *."

Bulletin 707 of the U. S. Department of Agriculture discloses that sodium fluoride will act as a contact, as well as a stomach poison. It is further stated that pyrethrum powder is effective against roaches, but that it is not nearly so active in that respect as sodium fluoride. It is also stated in the bulletin that the spraying with kerosene is effective in the elimination of roaches.

Claim 16 differs from claim 15 only in setting out the quantities of the sodium fluoride, kerosene, and pyrethrins.

Claim 21 differs from claim 20 in that the latter specifically names kerosene as a volatile carrier.

Claim 22 is the same as claim 21 except that claim 22 states that the sodium fluoride is suspended in pyrethrins.

Claim 23 differs from claim 22 only in setting out the amounts of sodium fluoride, kerosene, and pyrethrins.

Claim 24 differs from claim 22 by providing for the spraying of the insecticide in a pin stream under low pressure.

The Primary Examiner properly pointed out that the appealed claims differ from the disclosure of the App patent solely for the reason that in the App preparation copper compounds are used instead of sodium fluoride. The examiner held that this was merely the substitution of a well known, highly effective insecticide, sodium fluoride.

There is no specific teaching in any of the references of the use of sodium fluoride suspended in kerosene. However, the App patent discloses that copper-oxide, an insoluble compound, can be used with kerosene as a carrier, and that it possesses good adherence. We do not think it would involve exercise of the inventive faculty to substitute for copper oxide an insecticide particularly effective against roaches, such as sodium fluoride, which is also insoluble in the carrier. There is nothing in the record to bar the application of the general rule that mere substitution of one material for another is not invention. That is all appellant has done in view of the App patent. Therefore, we find no error below in the rejection of the article claims.

It is strongly contended by appellant in an attempt to establish patentability of the method claims that the loose

powder deposit of sodium fluoride which is left on the sprayed surfaces after the kerosene has evaporated is such an advantage over the prior art that those claims are patentable. That feature, while advantageous to the insecticide, is disclosed in the App patent, which disclosed that pyrethrum copper compounds and kerosene "cling remarkably." It may be observed that none of the involved claims is limited to use on any particular surface. No criticalness appears to be shown in any of the claims for the specific amounts of the ingredients in appellant's preparation.

It is contended that his claim 24 is patentable over the prior art for the reason that the spraying is accomplished through "a pin stream under low pressure." We find no reason why one skilled in the art would not realize the kind of stream and the proper pressure to employ in spraying an insecticide, and no satisfactory reason has been presented to sustain such contention.

For the reasons hereinbefore set out the decision of the Board of Appeals is affirmed.

Affirmed.